Paul E. Summit (PS 6263)
Andrew T. Solomon (AS 9200)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000

**10 CIV 0320**

JUDGE SULLIVAN

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MEGA INTERNATIONAL COMMERCIAL
BANK CO., LTD.,

         Plaintiff,

         -against-

FOREIGN TRADE BANK OF THE DPR
KOREA,

         Defendant.
------------------------------------------------------------X



**COMPLAINT**

ECF CASE

Plaintiff Mega International Commercial Bank Co., Ltd. (hereafter "Lender"), by its attorneys, Sullivan & Worcester LLP, complains of the defendant the Foreign Trade Bank of the DPR Korea (hereafter "Borrower") as follows:

### JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1330.

2. Venue properly exists in this district pursuant to 28 U.S.C. § 1391(f), based upon the residence and status of the parties, the events and omissions giving rise to the claims, and the agreement that provides the basis for this action.

## THE PARTIES

3. Lender, formerly known as The International Commercial Bank of China Co., Ltd., is a banking institution organized and existing under the laws of the Republic of China, with its principal place of business in Taipei, the Republic of China. The business of Lender includes the lending of money internationally.

4. Borrower is an agency or instrumentality of a foreign state as defined in 28 U.S.C. § 1603(b).

## BACKGROUND

5. Lender extended a loan to Borrower in 2001 for $5,000,000. Borrower has failed (1) to repay certain installments of principal since January 14, 2004 and (2) to make certain interest payments since January 14, 2004, in violation of the terms of the loan agreement, causing a default on the loan.

6. The purpose of the loan agreement was to provide financing to Borrower for its general "commercial use."

7. Pursuant to the terms and conditions of the loan agreement (Loan No. KD001-1) dated August 25, 2001 (hereinafter the "Loan Agreement"), Lender agreed to lend $5,000,000 to Borrower. The Loan Agreement was later amended by the exchange of (i) the letter dated December 30, 2001 from Borrower to Lender and (ii) the letter dated December 31, 2001 from Lender to Borrower, then further amended on June 5, 2002, and further amended on April 14, 2003.

8. Pursuant to the Loan Agreement, Borrower issued a Promissory Note (hereafter the "Note") to Lender, dated September 29, 2001, as amended June 17, 2002, and further amended April 14, 2003, by which Borrower promised to pay Lender $5,000,000 as advanced by Lender to Borrower pursuant to the Loan Agreement, with interest as specified therein.

## TERMS OF THE LOAN AGREEMENT

9. The Loan Agreement contains the following provisions:

10. The Loan Agreement requires that all disbursements of money from Lender to Borrower and all repayments of the loans from Borrower to Lender must be paid in United States Dollars and must be made at their respective bank accounts located in New York, New York.

11. For the term of the loan, interest accrues on each advance under the loan on the basis of a 360-day year at the rate of LIBOR plus one percent per annum and shall be payable semi-annually.

12. In the event of a default on an installment payment of principal, whether or not there has been an acceleration, the interest rate on each overdue installment payment of principal under the Loan Agreement is LIBOR plus three percent per annum.

13. The Loan Agreement provides for the repayment of principal in three approximately equal semi-annual installments.

14. The Loan Agreement provides, in substance, that Borrower must pay all reasonable expenses incurred by Lender in connection with its enforcement of the Loan Agreement and the Note.

15. Under the Loan Agreement, Borrower represented and warranted, in summary, that the Loan Agreement was binding and that it was lawful and duly authorized under the laws of the Democratic People's Republic of Korea (also known as North Korea). Borrower further warranted that its obligations to Lender will "at all times rank... at least *pari passu* with" all other external indebtedness. Borrower further warranted that its borrowing under the Loan Agreement constitutes "private and commercial acts" and that "with respect to its obligations under this [Loan] Agreement and the Note..... [n]either [Borrower] nor any property owned or held for its own account ... enjoys any right of immunity, on the ground of sovereignty or

otherwise, from suit, jurisdiction of any court, attachment prior to judgment, attachment in aid of execution of a judgment, set-off, execution of a judgment, or from any other legal process in respect of its obligations under this [Loan] Agreement or the Note...." Finally, Borrower stated unequivocally: "To the extent that [Borrower] or any property owned or held for its own account by [Borrower] has or hereafter may acquire any right of immunity from set-off, legal proceedings, attachment prior to judgment, other attachments or execution of judgment, on the ground of sovereignty or otherwise, [Borrower] hereby irrevocably waives such right to immunity for itself and the aforesaid property in respect of [Borrower's] obligations arising under this [Loan] Agreement, the Note and such related documentation hereunder."

16. Events of Default under the Loan Agreement are governed by the provisions of Article VIII. The following constitute Events of Default under the Loan Agreement: Borrower's breach of any representation, warranty, covenant, statement or opinion; Borrower's failure to perform any obligation including the nonpayment of amounts due under the Note; and Borrower's default on any other loan agreement, whether or not Lender is a party. It is also an Event of Default if Borrower declares a moratorium on the payment of any external indebtedness incurred or guaranteed by Borrower.

17. If an Event of Default occurs under the Loan Agreement, Lender, by written notice to Borrower, may declare the entire unpaid balance of the loan and any other sums payable immediately due and payable, presentment, demand and protest being waived.

18. The Loan Agreement contains a choice of law and forum selection clause, which dictates that the Loan Agreement and the Note are governed by the laws of the State of New York. Borrower is further required to maintain an agent for service of process in New York, and both parties agree to irrevocably consent to the non-exclusive jurisdiction of the Supreme Court

of the State of New York, County of New York, or the United States District Court for the Southern District of New York, and to waive any objection to that venue on any ground.

## CAUSE OF ACTION UNDER THE LOAN AGREEMENT

19. Lender repeats the allegations contained in paragraphs 1-18 above.

20. Pursuant to the Loan Agreement and the Note, Lender has loaned Borrower $5,000,000.

21. Borrower has failed to make required payments and is in default under the Loan Agreement and the Note. Borrower has failed to make the following required repayments of principal: (a) $1,666,700 on January 14, 2004; (b) $1,666,700 on July 14, 2004; and (c) $1,666,600 on September 15, 2004.

22. Borrower has failed to make the following required installments of interest: (a) $54,177.78 on January 14, 2004; (b) $36,568.15 on July 14, 2004; and (c) $8,286.65 on September 15, 2004.

23. Borrower has failed to make the following required payments of default interest: (a) $34,715.51 on July 14, 2004; and (b) $28,241.19 on September 15, 2004.

24. On August 26, 2004, Lender gave written notice of default and acceleration to Borrower that certain events of default had occurred under the terms of the Loan Agreement, and that the entire unpaid balance and all other sums payable under the Loan Agreement and Note were immediately due and payable. The notice contained instructions to remit payment no later than September 15, 2004.

25. In December 2008, Borrower repaid interest in the amount of $100,000. In January 2009, Borrower repaid interest in the amount of $61,889.34. In February 2009, Borrower repaid interest in the amount of $100. The total interest repaid by the Borrower is $161,989.34.

26. In February 2009, Borrower repaid principal in the amount of $100,000. In April 2009, Borrower repaid principal in the amount of $100,000. In May 2009, Borrower repaid principal in the amount of $100,000. The total principal repaid by Borrower is $300,000.

27. Borrower has made no additional repayments since May 2009.

28. The principal balance owing under the Loan Agreement and the Note is $4,700,000.

29. The default interest owing under the Loan Agreement and the Note from September 15, 2004, to January 14, 2010, calculated at the contract default rate of LIBOR plus three percent, is $1,784,309.48.

30. Therefore, under the Loan Agreement and the Note, there is now due and owing from Borrower to Lender the principal sum of $4,700,000, plus default interest of $1,784,309.48 from September 15, 2004, to January 14, 2010, plus costs and attorneys' fees.

WHEREFORE, Lender demands judgment in its favor as follows:

(a) the sum of $4,700,000, plus $1,784,309.48, plus prejudgment interest at the contract default rate (*i.e.,* LIBOR plus three percent) on unpaid principal from January 14, 2010 to the date of judgment, plus costs and attorneys' fees incurred by Lender in connection with enforcement of the Loan Agreement;

(b) disbursements and court costs; and

(c) such other and further relief as this Court deems just and proper.

Dated: New York, New York  
       January 14, 2010

SULLIVAN & WORCESTER LLP

By: _/s/ Andrew Solomon_  
Paul E. Summit, Esq. (PS 6263)  
Andrew T. Solomon, Esq. (AS 9200)  
1290 Avenue of the Americas, 29th Floor  
New York, NY 10104  
Telephone: 212.660.3000  
Facsimile: 212.660.3001

*Attorneys for Plaintiff*